| UNITED STATES DISTRICT COURT | FOR PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

Rogelio Rodriguez, et al.,

                Plaintiffs,

– against –                 **MEMORANDUM & ORDER**

Omar Velez-Pagan, et al.,            17-CV-3911 (ERK) (SJB)

                Defendants.

KORMAN, *J.*:

      In November of 2013, Omar Velez-Pagan, a servicemember, was assigned to serve "as a representative of the U.S. Army Security Assistance Training Management Organization for the purpose of training officers of the National Police Force of the Republic of Panama." Am. Compl. ¶ 23, ECF No. 15. The following month, Velez-Pagan arrived in Panama and commenced "his role as a member of the Administrative and Technical Staff" at the U.S. Embassy in Panama. *Id.* ¶ 24. The Embassy provided Velez-Pagan with a pickup truck "to accomplish his duties." *Id.* ¶ 25. While stationed in Panama, Velez-Pagan initiated a romantic relationship with a young Panamanian woman, Vanesa Itzel Rodriguez Chavarria ("Rodriguez"). *Id.* ¶ 26.

      On June 19, 2014, Velez-Pagan and a colleague were ordered to provide firearm instruction to Panamanian National Police Units in Guarare, Panama. *Id.* ¶ 27. On June 22, Velez-Pagan, his colleague, and some Panamanian police officers spent the afternoon at a nearby beach. Pls.' Supporting Evidence 80, ECF No. 14. Rodriguez met up with Velez-Pagan and the others. *Id.*

      At his trial for Rodriguez's murder, Velez-Pagan testified that they left the beach together in his Embassy-provided car. *Id.* at 78. He stated that while they were driving, Rodriguez became aggressive, began arguing with him and, at one point, hit him in the face. *Id.* at 78-79. In response,

he punched her in the face. *Id.* at 79. Although Velez-Pagan testified that he only punched her once or twice, *id.*, "blood stains were found all over the passenger side of the [pickup truck]," suggesting a more brutal beating. Am. Compl. ¶ 29. A DNA test showed that it was Rodriguez's blood, and the Amended Complaint alleges that the murder occurred inside the vehicle. *Id.* ¶¶ 11, 29-30. Velez-Pagan then "repeatedly r[a]n over the body of [Rodriguez] to cover up the murder to make it appear [as though] her death was caused by a traffic accident." *Id.* ¶ 28. The investigating agent testified that Velez-Pagan kept steroids and syringes in his apartment, Pls.' Supporting Evidence 85, and was allegedly using those drugs when he killed Rodriguez, Am. Compl. ¶ 45.

The next morning, during a firearms training exercise, "Velez-Pagan excused himself to go to the bathroom in the woods . . . near the shooting range." Cortes Decl., Ex. 2, at 6, ECF No. 21-4. A few minutes later, a Panamanian policeman found Velez-Pagan digging a hole with Rodriguez's body nearby. *Id.* at 7. The officer held Velez-Pagan at gunpoint while calling for assistance from his fellow officers. *Id.* When the other officers arrived, Velez-Pagan admitted he had killed her. *Id.* Velez-Pagan was returned to the United States, tried by a military court, and convicted for, *inter alia*, unpremeditated murder, aggravated assault, and possession of steroids.

On March 24, 2016, Rodriguez's Estate and both of her parents filed wrongful death administrative claims with the Army and the State Department, as required by the Federal Tort Claims Act to exhaust remedies. Cortes Decl., Exs. 1-2, ECF Nos. 21-3, 21-4; Opp. Br. 27, Ex. D, ECF No. 18. Those claims were denied on January 10, 2017. Am. Compl. ¶ 8.

The instant action was filed in this court by Rodriguez's family and Estate (collectively, "plaintiffs") against the United States Army; Department of Defense; Department of State (collectively, the "Agency Defendants"); the United States (collectively with the Agency Defendants, the "United States"); and Omar Velez-Pagan, in both his official and individual

2

capacities.[1] Am. Compl. ¶¶ 16-20. The Amended Complaint alleges four causes of action: negligence, "negligent retention and negligently placing others in danger," wrongful death, and negligent infliction of emotional distress. *Id.* ¶¶ 33-63. Broadly, plaintiffs claim that the United States was negligent in hiring and supervising Velez-Pagan and in failing to verify his compliance with regulations governing drug use, ultimately leading to Rodriguez's death. *See id.* Defendants filed a motion to dismiss pursuant to Rule 12(b), principally for lack of subject matter jurisdiction.

**DISCUSSION**

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted). While the court must take all facts alleged in the complaint as true, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction . . . a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). A "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova*, 201 F.3d at 113).

Plaintiffs appear to assert three different bases for jurisdiction—the Federal Tort Claims Act ("FTCA"), the Alien Tort Claims Act ("ATCA"), and the Torture Victim Protection Act ("TVPA"). As to claims asserted against Velez-Pagan in his individual capacity, the plaintiffs assert supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). I will address each basis in turn.

**A. FTCA Claims**

The FTCA provides a waiver of sovereign immunity for

> civil actions on claims against the Government, for money damages . . . for . . . personal injury or death caused by the negligent or wrongful act or omission of any

---

[1] The United States does not represent Velez-Pagan in his individual capacity. Velez-Pagan was served on August 2, 2017 but has not filed any responsive papers. *See* ECF No. 20-1.

3

> employee of the United States while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). This waiver, however, is limited and subject to various exceptions. The defendants contend that several of these limitations and exceptions insulate them from liability.

### a. Foreign Country Exception

"[T]he FTCA's foreign country exception bars all claims based on any injury suffered in a foreign country, regardless of where the tortious act or omission occurred." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 (2004); *see also* 28 U.S.C. § 2680(k) ("[The FTCA] shall not apply to [a]ny claim arising in a foreign country."). Specifically, claims based on acts or omissions occurring within the United States but which have their operative effect or cause injury in another country are not authorized under the FTCA. *See Sosa*, 542 U.S. at 701-11. The injury here—the brutal murder of Rodriguez and the subsequent pain and suffering endured by her family—occurred in Panama. Thus, the foreign country exception bars any claims arising out of Velez-Pagan's crimes.

The plaintiffs, however, argue that because "the murder . . . occurred inside [a] vehicle owned by the United States," Am. Compl. ¶ 30, and, because "the diplomatic vehicle where Velez-Pagan injured and later murdered [her] is considered . . . territory of the United States," the murder did not actually occur in a foreign country, Opp. Br. 10-11. Plaintiffs base their conclusion on the Vienna Convention on Diplomatic Relations, which provides that "the means of transport of [the Embassy] shall be immune from search, requisition, attachment or execution." Vienna Convention on Diplomatic Relations, art. 22, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95. Plaintiffs argue that the vehicle given to Velez-Pagan while assigned to the Embassy "was not under the sovereignty of Panama but under the control of the United States." *Id.*

4

Control of property is not the appropriate benchmark for determining whether an event arose in a foreign country. *United States v. Spelar*, 338 U.S. 217 (1949), is on point. The Supreme Court there held that, even though an accident occurred on an airbase leased by the United Kingdom to the United States, torts arising from that accident were not permitted under the FTCA because the lease did not transfer sovereignty of the area to the United States. *Spelar*, 338 U.S. at 219. Similarly, here, events that occurred inside the vehicle did not occur in the United States simply because the United States owned the vehicle. Even American embassies are treated as being in foreign countries for purposes of the FTCA. *See Asmah v. U.S. Consulate Accra Ghana*, No. 15-CV-3742 (JPO), 2016 WL 2993203, at *4 (S.D.N.Y. May 23, 2016) (collecting cases holding that a tort committed at an American embassy or consulate arose in a foreign country under the FTCA); *see also McKeel v. Islamic Republic of Iran*, 722 F.2d 582, 588 (9th Cir. 1983) (holding in an analogous context that "[a] United States embassy . . . does not constitute territory of the United States"), *cited with approval in Harrison v. Republic of Sudan*, 838 F.3d 86, 95 (2d Cir. 2016); Restatement (Third) of Foreign Relations § 466 cmt. a (1987) ("That [consular] premises are inviolable does not mean that they are extraterritorial. Acts committed on those premises are within the territorial jurisdiction of the [host] state."). Thus, events that transpire inside a vehicle owned by the U.S. Embassy while it is being driven on a Panamanian road occur in a "foreign country" for FTCA purposes.

    b. <u>No Waiver for Intentional Torts</u>

Section 2680(h) of the FTCA forecloses any claims arising out of intentional torts, including "[a]ny claim arising out of assault [or] battery," 28 U.S.C § 2680(h), even if the claim otherwise sounds in negligence. *United States v. Shearer*, 473 U.S. 52, 55 (1985) (plurality opinion). "In determining the applicability of the § 2680(h) exception"—that is, the bar on claims arising out of intentional torts—"a court must look, not to the theory upon which the plaintiff[s]

5

elect[] to proceed, but rather to the substance of the claim." *Dorking Genetics v. United States*, 76 F.3d 1261, 1265 (2d Cir. 1996) (quoting *Lambertson v. United States*, 528 F.2d 441, 443 (2d Cir. 1976)).

Plaintiffs urge me to adopt the holding in *Bennett v. United States*, 803 F.2d 1502, 1504 (9th Cir. 1986), which held that the assault and battery exception does not bar negligent hiring and supervision claims where the "negligence amounts to almost reckless disregard." Putting aside the fact that plaintiffs do not allege negligence amounting to reckless disregard, the Second Circuit has repeatedly held that, even where a government agency is aware of an individual's prior misconduct or hostility, the "broad . . . scope of section 2680(h) in the context of mixed claims of negligent and intentional conduct" requires dismissal where "the allegation of negligence merely present[s] the assault claim in artfully redrawn form." *Guccione v. United States*, 847 F.2d 1031, 1034 (2d Cir. 1988) (discussing *Miele v. United States*, 800 F.2d 50 (2d Cir. 1986)); *see also, e.g.*, *Johnson ex rel. Johnson v. United States*, 788 F.2d 845 (2d Cir. 1986). But where the government assumes responsibility over an individual's conduct outside the employment relationship—such as "voluntarily undertaking to provide care to a person who [is] visibly drunk and visibly armed"—the United States may be held responsible for torts committed by that individual. *Sheridan v. United States*, 487 U.S. 392, 401-03 (1988). In sum, where the "complaint does not allege a claim based on negligence 'independent' of defendant's hiring and supervision of its employee," the "claim is within the § 2680(h) exception" and is not permitted by the FTCA. *Kenna v. United States*, 927 F. Supp. 62, 66 (E.D.N.Y. 1996).

Here, plaintiffs' three negligence claims and their wrongful death claim are not "'independent' of defendant's hiring and supervision" of Velez-Pagan. *Id.* Plaintiffs' claims are based on the assertion that, had defendants not acted negligently in hiring, deploying, and supervising Velez-Pagan, Rodriguez "would not have been assaulted and murdered." Am. Compl.

¶¶ 34-38; *see also id.* ¶¶ 40, 44-45, 47, 52, 61, 63; Opp. Br. 13-15. The substance of each claim arises out of an assault or battery claim, and the United States' alleged negligence is predicated on its employment of Velez-Pagan.

For example, plaintiffs contend that the United States had a separate "obligation to conduct a blood test on all active duty personnel once a year," and, had Velez-Pagan been tested, it would have revealed that he "was wrongfully using anabolic steroids." Opp. Br. 13-14. The Amended Complaint further alleges that "Velez-Pagan's dependency [on] illegal drugs" was a contributing factor to Rodriguez's assault and murder. Am. Compl. ¶ 41. To the extent plaintiffs argue that the United States had a duty to drug test Velez-Pagan in accord with various regulations, that obligation was not "independent" of Velez-Pagan's employment relationship and did not arise out of any other relationship he had with the United States. The drug-testing regulations identified in the Amended Complaint solely apply to employees of the United States; they are not rules broadly applied to federal employees and non-employees alike. *See LaFrancis v. United States*, 66 F. Supp. 2d 335, 340-41 (D. Conn. 1999) (collecting cases and holding that an "independent duty" does not exist where service giving rise to tort claim is only made available to government personnel and their families). Similarly, the United States' alleged decisions to deploy Velez-Pagan to Panama, to provide him with a vehicle, and to refrain from reprimanding him for his improper relationship with Rodriguez, *see* Opp. Br. 13-15, were related to Velez-Pagan's employment. Thus, the intentional tort exception bars plaintiffs' claims.

    c. Other Bases for Dismissal

The defendants raise several other grounds for dismissal. As all claims are barred by both the foreign country and intentional tort exceptions, I address these remaining arguments only briefly.

7

### i. *Claims Against the Agency Defendants*

"The FTCA expressly provides that only the United States may be held liable for torts committed by a federal agency, and not the agency itself." *C.P. Chem. Co. v. United States*, 810 F.2d 34, 37 n.1 (2d Cir. 1987) (citing 28 U.S.C. § 2679(a)); *see also Mignogna v. Sait Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991) ("[A]n action [under the FTCA] must be brought against the United States rather than an agency thereof."). Thus, claims asserted against the Agency Defendants are not permitted under the FTCA and must be dismissed.

### ii. *Scope of Employment*

The FTCA only waives immunity as to acts of an employee "acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). To determine whether an employee was acting within the scope of employment, "the law of the place where the act or omission occurred" applies. *Id.* Plaintiffs argue that the law of the District of Columbia should apply because Velez-Pagan was employed by the U.S. Department of State, which is in the District of Columbia. Opp. Br. 5. Assuming this is correct, the District of Columbia Court of Appeals has adopted the rule set out in the Second Restatement of Agency for determining the scope of employment. *See Hechinger Co. v. Johnson*, 761 A.2d 15, 24 & n.5 (D.C. 2000) ("Conduct of an employee is considered generally to be within the scope of employment if: (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master; and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master."). Because Velez-Pagan's assault and murder of Rodriguez was neither the kind of work he was hired to perform nor "actuated . . . by a purpose to serve the master," Restatement (Second) of Agency § 228 (1958), it was outside the scope of his employment.

iii. *Failure to Exhaust Administrative Remedies*

Plaintiffs must "present[] [their] claim to the appropriate Federal agency" and have that claim denied before filing suit. 28 U.S.C. § 2675(a). Rogelio Rodriguez, in his capacity as Rodriguez's father and administrator of her Estate, filed a claim, Cortes Decl., Exs. 1, 2, ECF Nos. 21-3, 21-4, as did Rodriguez's mother, Opp. Br. 27-28, Ex. D. No exhibits support the allegation that plaintiff Samuel Antonio Rodriguez did so, and the emails exchanged between plaintiffs and the Army indicate that claims were filed by only the Estate and Rodriguez's parents. *See id.* at 24 (email from plaintiffs' counsel noting that claims were filed by the "Mother, Father, and Estate"); *see also Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) ("In reviewing a facial attack to the court's jurisdiction, we draw all facts—which we assume to be true *unless contradicted by more specific allegations or documentary evidence*—from the complaint and from the exhibits attached thereto.") (emphasis added). Accordingly, Rodriguez's brother failed to exhaust his administrative remedies and must be dismissed as a plaintiff.[2]

iv. *Discretionary Function Exception*

A claim based on "failure to exercise or perform a discretionary function or duty" is not authorized under the FTCA. 28 U.S.C. § 2680(a). "Personnel decisions of the United States generally fall within the discretionary function exception to the FTCA." *Li v. Aponte*, No. 05 Civ. 6237(NRB), 2008 WL 4308127, at *8 (S.D.N.Y. Sept. 16, 2008) (collecting cases); *see also* 16 Moore's Federal Practice – Civil § 105.26(2)(a.1)(iv) ("Issues of employee hiring, supervision, and retention generally involve the permissible exercise of policy judgment and fall within the

---

[2] The emails submitted as exhibits by plaintiffs indicate that the Army did not deny their claims but rather settled them. *See* Opp. Br. 23-24, Ex. D. While the United States does not make this argument, if true, plaintiffs' claims would be barred. *See* 28 U.S.C. § 2672 ("The acceptance by the claimant of any . . . settlement shall be final and conclusive on the claimant, and shall constitute a complete release of any claim against the United States and against the employee of the government whose act or omission gave rise to the claim, by reason of the same subject matter.").

9

discretionary function exception."). Thus, to the extent plaintiffs' claims are based on negligent supervision and hiring, those claims are barred. As to plaintiffs' claim based on defendants' failure to drug test Velez-Pagan, *see* Am. Compl. ¶¶ 36-37, such conduct was not discretionary as it was mandated by various regulations, *Berkovitz v. United States*, 486 U.S. 531, 536 (1988) ("[T]he discretionary function exception will not apply when a federal . . . regulation . . . specifically prescribes a course of action for an employee to follow.").

     v. *No Private Analog*

To the extent plaintiffs' claims are based on failure to comply with drug-testing regulations, their claim is not cognizable because "[t]he FTCA does not create new causes of action, but only waives immunity under circumstances that would create liability 'in the same manner and to the same extent as a private individual under like circumstances.'" *Dorking Genetics*, 76 F.3d at 1266 (quoting 28 U.S.C. § 2674). Thus, it does not permit suit for "direct violations of . . . regulations standing alone." *Id.* (citing *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988)).

**B. ATCA Claims**

The Alien Tort Claims Act provides: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. But the ATCA does not automatically confer jurisdiction over claims occurring outside of the United States, as "the presumption against extraterritoriality applies to claims under the [ATCA]." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 124 (2013). And, when a "party asserting jurisdiction under the [ATCA]" is suing the United States, it "must establish, independent of that statute, that the United States has consented to suit." *Czetwertynski v. United States*, 514 F. Supp. 2d 592, 596 (S.D.N.Y. 2007) (quoting *Goldstar (Panama) S.A. v. United States*, 967 F.2d 965, 968 (4th Cir. 1992)); *see also Escarria-Montano v. United States*, 797 F. Supp. 2d 21, 24-25 (D.D.C. 2011) (collecting cases). For the reasons stated

above, plaintiffs have failed to establish a waiver of sovereign immunity. Moreover, plaintiffs fail to explain how the events here "touch and concern . . . the United States . . . with sufficient force to displace the presumption against extraterritorial application." *Kiobel*, 569 U.S. at 124-25. Accordingly, the ATCA does not provide for jurisdiction over plaintiffs' claims.

### C. TVPA Claims

While the TVPA creates a cause of action for torture, it is not a jurisdiction-conferring statute; rather, it relies on the jurisdiction conferred by the ATCA or "the general federal question jurisdiction of section 1331." *Kadic v. Karadzic*, 70 F.3d 232, 246 (2d Cir. 1995). As to the United States, the TVPA only establishes a cause of action against individuals, not the United States or any agency. *See* 28 U.S.C. § 1350 note, § 2(a); *see also Mohamad v. Palestinian Auth.*, 566 U.S. 449, 456 (2012) ("[T]he [TVPA] authorizes liability solely against natural persons."). Moreover, the TVPA neither independently confers jurisdiction nor waives immunity as to any claims asserted against the defendants. *See Escarria-Montano¸* 797 F. Supp. 2d at 24 ("[N]either the TVPA nor the ATCA contains language authorizing a lawsuit against the United States."). Thus, pleading a TVPA violation does not save plaintiffs' suit.

### D. Individual Claims Against Velez-Pagan

I turn now to the claims against Velez-Pagan in his personal capacity. Although Velez-Pagan has submitted no papers, I must still address the question of jurisdiction. *See Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) (noting that an "action must be dismissed" "[i]f subject matter jurisdiction is lacking," an issue which "may be raised . . . by the court sua sponte"). The sole basis asserted for jurisdiction over Velez-Pagan in his individual capacity is 28 U.S.C. § 1367(a). Am. Compl. ¶ 6. Supplemental jurisdiction is a species of "subject-matter jurisdiction over specified state-law claims, which [a federal court] may (or may not) choose to exercise." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). Even though the

exercise of supplemental jurisdiction is discretionary to an extent, it is inherently intertwined in the existence of subject-matter jurisdiction because "a district court 'cannot exercise supplemental jurisdiction unless there is first a proper basis for original federal jurisdiction.'" *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). "It follows that when a district court correctly dismisses all federal claims for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the district court is thereby precluded from exercising supplemental jurisdiction over related state-law claims." *Id.* (citing 28 U.S.C. § 1447(c)). Because all other claims asserted in this action are barred for lack of subject matter jurisdiction, I cannot exercise supplemental jurisdiction over the claims against Velez-Pagan in his individual capacity. And even if I could, I would decline to do so under the circumstances of this case.

## CONCLUSION

The motion to dismiss for lack of subject matter jurisdiction is granted.

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York
October 26, 2018

Edward R. Korman
United States District Judge